UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BETANCOURT PROPERTIES MANAGEMENT CORP. and RENEWAL ARTS REALTY CORP.,

Plaintiffs,

-against-

SIMPLEX GRINNELL LP a/k/a and/or d/b/a SIMPLEX GRINNELL or TYCO/FIRE & SECURITY/SIMPLEXGRINNELL,

Defendants.

CASE NO. 07-cv-11047 (TPG)

**DEFENDANT SIMPLEXGRINNELL LP'S NOTICE OF PARTIAL MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56**

1. Defendant SimplexGrinnell LP ("SimplexGrinnell") moves for an Order, pursuant to the law of the State of Massachusetts,[1] dismissing Betancourt Properties Management Corp.'s and Renewal Arts Realty Corp.'s lawsuit. If the Court, however, determines that through the attachment of extrinsic evidence, this motion is converted to a motion for summary judgment, SimplexGrinnell hereby moves for an Order granting summary judgment against Plaintiffs on the basis there is no issue of material fact with respect to Plaintiffs' entitlement to relief against SimplexGrinnell.

2. Plaintiffs' Verified Complaint does not state a claim upon which relief can be granted. Plaintiffs' causes of action are somewhat difficult to ascertain, as they are not titled or clearly delineated. However, they appear to consist of failure to render competent contracting

[1] The contract in question contains a choice of law provision applying the law of the State of Massachusetts. See Exhibit "B" attached to SimplexGrinnell's Memorandum of Law.

services thereby causing a breach of contract, careless, negligent, or reckless rendering of contracting services, fraudulent inducement, and anticipatory breach of a service agreement. The relevant contract between Plaintiffs and SimplexGrinnell bars the recovery of consequential damages, exactly the type of damages sought. With respect to Plaintiffs' fraud claims, Plaintiffs fail to plead any facts whatsoever, let alone the particularized facts required to support a fraud claim; hence, recovery based on a cause of action for fraud is also barred.

3. Alternatively, if this motion is considered a motion for summary judgment, partial summary judgment is proper in this case because there are no genuine issues of material fact with respect to each of Plaintiffs' claims.

4. This Motion is based on the attached Memorandum in Support of Motion to Dismiss or, Alternatively, Partial Motion for Summary Judgment, the attached evidence, and all pleadings and papers on file.

Dated: White Plains, New York
January 11, 2008

Respectfully submitted,

By:________________________

Michael D. Shalhoub, Esq. (MS-2879)
Suzin L. Raso, Esq. (SR-5426)
GOLDBERG SEGALLA, LLP
170 Hamilton Avenue, Suite 203
White Plains, New York 10601-1717
(914) 798-5400

*Attorneys for Defendant*
*SimplexGrinnell LP.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

BETANCOURT PROPERTIES MANAGEMENT CORP. and RENEWAL ARTS REALTY CORP.,

Plaintiffs,

-against-

SIMPLEX GRINNELL LP a/k/a and/or d/b/a SIMPLEX GRINNELL or TYCO/FIRE & SECURITY/SIMPLEXGRINNELL,

Defendants.

---------------------------------------------------------x

CASE NO. 07-cv-11047 (TPG)

**DEFENDANT SIMPLEXGRINNELL LP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR, IN THE ALTERNATIVE, PARTIAL MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56**

Defendant SimplexGrinnell LP ("SimplexGrinnell"), submits this Memorandum in Support of its Motion to Dismiss Pursuant to Rule 12(b)(6) or, in the Alternative, Partial Motion for Summary Judgment Pursuant to Rule 56, stating as follows:

## INTRODUCTION

1. Plaintiffs Betancourt Properties Management Corp. and Renewal Arts Realty Corp. (collectively "Betancourt") filed suit against SimplexGrinnell on or about October 28, 2007, alleging, *inter alia*, that SimplexGrinnell failed to competently render services relating to the redesign and permitting process for a fire safety system located at 804 East 138th Street, Bronx, New York, a commercial premises, and that such failure has resulted in Betancourt's

damages.[2] While the Plaintiffs have not specified the nature of the claimed damages within the Complaint, which is reason enough for its dismissal, upon information and belief Plaintiffs are claiming lost rents on the commercial premises in the amount of $75,000.00 per month for at least two-and-a-half months. Plaintiffs couch their complaint in terms of breach of contract, negligent, careless or reckless performance of services, fraudulent inducement, and conspiracy to defraud. Plaintiffs' fourth cause of action, though phrased as another cause of action, appears rather to be an attempted affirmative defense to an anticipated counterclaim against Plaintiffs for Plaintiffs' breach of a five-year service agreement. In any event, for purposes of this Motion, SimplexGrinnell will treat this final count as a part of Plaintiffs' breach of contract claim. For the reasons set forth below, even if all of Plaintiffs' allegations are taken as true, they cannot prevail.

## LEGAL ARGUMENT

2. "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984), citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). In this instance, such dismissal is warranted pursuant to Rule 12(b)(6).

### *Massachusetts Law Applies*

3. Pursuant to Paragraph 28 of the contract for plans to modify the fire alarm system at the premises in question, "[t]he laws of Massachusetts shall govern the validity, enforceability,

[2] Without admitting any of the allegations therein, *see* Plaintiffs Verified Complaint attached hereto as Exhibit A.

and interpretation of this Agreement." *See* Contract[3], attached hereto as Exhibit B, paragraph 28 of the Terms and Conditions. *See also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) ("Largely for the reasons we hold parties to their contractual promises to litigate in a specified forum, federal courts give substantial weight to choice of law provisions.") The Court further referenced the "presumptive validity" of choice of law clauses contained in contracts. *Id.*

***Negligent Performance of Services Claim is Barred by Economic Loss Rule***

4. In Plaintiffs' Second Cause of Action as set out in their Verified Complaint, Plaintiffs allege that SimplexGrinnell carelessly, recklessly, and/or negligently performed its contracted-for services. However, the purported damages, just as with the other claims in the Complaint, are *solely* economic and *solely* based on the contract between the parties.[4] As the Massachusetts Supreme Judicial Court has repeatedly affirmed, "...purely economic losses are unrecoverable in tort... actions in the absence of personal injury or property damage." *FMR Corp. v. Boston Edison Co.*, 613 N.E.2d 902, 903 (Mass. 1993), citing *Garweth Corp. v. Boston Edison Co.*, 613 N.E.2d 92 (Mass. 1993). There are no allegations of personal injury or property damage in Plaintiffs' Verified Complaint. As such, Plaintiffs' claims for careless, reckless, and/or negligent performance of services are barred.

***Plaintiffs' Claim for Conspiracy to Defraud Fails as a Matter of Law***

5. As part of their Third Cause of Action, Plaintiffs claim that they were the victims of a "conspiracy to defraud" them of "valuable consideration." It is axiomatic that for a

---

[3] Due to the partial illegibility of the original Contract attached hereto as Exhibit B, an unsigned duplicate of the original Contract, identical in all material respects to the original Contract, is also attached hereto as Exhibit B for the Court's convenience.

[4] Without admitting any of the allegations therein, *see* Plaintiffs' Verified Complaint attached hereto as Exhibit A.

conspiracy to exist, two or more persons must be involved. *See Kurker v. Hill*, 44 Mass. App. 184, 188-89 (1998) (holding that Massachusetts provides two ways to find civil conspiracy: the first one requires coercion, and the other depends on proof of underlying tortious acts in which two or more persons acted in concert and in furtherance of a common design or agreement). It is the latter of the two definitions of conspiracy Plaintiffs appear to be relying on herein.

6. As such, one would expect to see allegations that SimplexGrinnell acted in concert and in furtherance of a common design or agreement with some other party. Such allegations are conspicuously absent, however. In Massachusetts, it is well-settled that employees cannot be liable for conspiracy with their employer. *Cape Cod Food Products, Inc. v. National Cranberry Assoc.*, 119 F.Supp. 900, 909 (D.Mass. 1954). Moreover, a corporation itself cannot be liable for conspiracy since a conspiracy requires two or more parties. *DesLauries v. Shea*, 300 Mass. 30 (1938). As such, Plaintiffs' conspiracy claim must fail as a matter of law.

***The Underlying Fraud Claim Must Also Fail as a Matter of Law***

7. "To establish fraud in the inducement, ... [the plaintiff] is required to establish the elements of common law deceit, *Plumer v. Luce*, 310 Mass. 789, 801-802, 39 N.E.2d 961 (1942), which include 'misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying.' *Hogan v. Riemer*, 35 Mass. App. 360, 365, 619 N.E.2d 984 (1993)." *Commerce Bank & Trust Co. v. Hayeck*, 46 Mass. App. 687, 692, 709 N.E.2d 1122 (1999).

8. Based on Plaintiffs' pleading, there is no set of facts under which Plaintiffs can prevail on their fraud claim. There is no allegation that SimplexGrinnell or any of its agents misrepresented a material fact. There is no allegation that such a misrepresentation induced any

particular action. There is no allegation that Plaintiffs reasonably relied on the alleged misrepresentations to their detriment. Not only are these essential elements of a fraudulent inducement claim not alleged with particularity, *they are not alleged at all.* As such, Plaintiffs' fraud claim must fail as a matter of law and should be dismissed.

***The Contract Between the Parties Bars Recovery of Consequential Damages***

9. The lost rents ostensibly claimed by Plaintiffs as damages have been, allegedly, caused by SimplexGrinnell's failure to timely complete its work under the contract between the parties. As such, they are consequential damages. *See, e.g., Boylston Housing Corp. v. O'Toole*, 321 Mass. 538, 562 (1947) ("Consequential damages are damages that 'flow according to common understanding as the natural and probable consequences of the breach and such as may be presumed to have been in the contemplation of the parties at the time the contract was made.'") (quoting *Bucholz v. Green Bros. Co.*, 272 Mass. 49, 54 (1930)).

10. The contract between the parties, however, bars both incidental and consequential damages:

> **IN NO EVENT SHALL COMPANY BE LIABLE FOR ANY DAMAGE, LOSS, INJURY, OR ANY OTHER CLAIM ARISING FROM ANY SERVICING, ALTERATIONS, MODIFICATIONS, CHANGES, OR MOVEMENTS OF THE COVERED SYSTEM(S) OR ANY OF ITS COMPONENT PARTS BY THE CUSTOMER OR ANY THIRD PARTY. COMPANY SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING BUT NOT LIMITED TO DAMAGES ARISING FROM THE USE, LOSS OF THE USE, PERFORMANCE, OR FAILURE OF THE COVERED SYSTEM(S) TO PERFORM.**

As the Court can readily ascertain, this disclaimer appears in all capital letters and in boldface type in the original. *See* Contract, Exhibit B, Terms and Conditions, paragraph 5.

11. It is undisputed that Betancourt Properties, Renewal Arts, and SimplexGrinnell are commercial entities who engaged in a business transaction evidenced by the attached contract. Sophisticated commercial parties are free to limit or exclude prospective consequential damages arising from a breach of contract so long as such limitation or exclusion is not unconscionable. *See Standard Register Co. v. Bolton-Emerson, Inc.*, 649 N.E.2d 791, 793 (Mass. App. 1995), *citing* Mass. Gen. Laws Ch. 106, § 2-719(3). Moreover, "the consensual allocation of risk is not contrary to public policy." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 406 Mass. 369, 374, 548 N.E.2d 182 (1990), citing *Minassian v. Ogden Suffolk Downs, Inc.*, 400 Mass. 490, 493, 509 N.E.2d 1190 (1987). With consequential damages explicitly and clearly excluded by contract, Plaintiffs cannot recover and their claims should be summarily dismissed.

***There are No Genuine Issues of Material Fact***

12. Alternatively, should the Court determine that this is more properly a Rule 56 Motion for Summary Judgment, there are no genuine issues of material fact that would prevent the Court from granting summary judgment as to each of Plaintiffs' claims. *See D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998) ("[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law."). The contractual disclaimer of consequential damages is unambiguous, as is Massachusetts substantive law on the validity of such disclaimers with respect to the types of claims made herein. Further, there are no issues of material fact with respect to Plaintiffs' fraud claims as no actual facts are alleged. As such, summary judgment should be granted and Plaintiffs' claims dismissed in their entirety.

**WHEREFORE**, Defendant SimplexGrinnell LP prays for the relief requested herein, that Plaintiffs take nothing by their claims, and that such claims be dismissed forthwith.

Dated: White Plains, New York
January 11, 2008

Respectfully submitted,

By:_______________________________

Michael D. Shalhoub, Esq. (MS-2879)
Suzin L. Raso, Esq. (SR-5426)
GOLDBERG SEGALLA, LLP
170 Hamilton Avenue, Suite 203
White Plains, New York 10601-1717
(914) 798-5400

*Attorneys for Defendant*
*SimplexGrinnell LP.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2008 I electronically filed the foregoing Notice of Motion to Dismiss Pursuant to FRCP 12(b)(6) or in the alternative Summary Judgment pursuant to FRCVP 56 with the Clerk of the US District for the Southern District of New York, using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

Brian M. Limmer, Esq.
114 Old Country Road
Suite 460
Mineola, New York 11501

In addition, Plaintiff's counsel, Brian M. Limmer, Esq., was mailed a copy of the foregoing Notice of Motion to Dismiss pursuant to FRCP 12(b)(6) via US Mail on this the 11th day of January 2008.

By:______________________________
Michael D. Shalhoub, Esq. (MS-2879)
Suzin L. Raso, Esq. (SR-5426)
GOLDBERG SEGALLA, LLP
170 Hamilton Avenue, Suite 203
White Plains, New York 10601-1717
(914) 798-5400

*Attorneys for Defendant*
*SimplexGrinnell LP.*

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW SIMPLEX
COUNTY OF THE BRONX
---------------------------------------X

BETANCOURT PROPERTIES MANAGEMENT CORP. and RENEWAL ARTS REALTY CORP.,

Plaintiffs,

-against-

SIMPLEX GRINNELL LP a/k/a and/or d/b/a as SIMPLEX GRINNELL or TYCO/FIRE & SECURITY/SIMPLEX GRINNELL,

Defendant.

---------------------------------------X

Plaintiffs designates Bronx County as the place of Trial.

The basis of the venue is:

Plaintiffs's business address:
804 East 138th Street,
Bronx, NY 10454

SUMMONS
INDEX #: 302266/07
DATE FILED: 10/28/07

To the above-named Defendant:

YOU ARE HEREBY SUMMONED to answer the Complaint in this Action, and to serve a copy of your Answer, or if the Complaint is not served with the Summons, to serve a Notice of Appearance, on the Plaintiffs' attorney within Twenty (20) days after the service of this Summons, exclusive of the day of service, or within Thirty (30) days after the completion of service where service is made in any other manner then by personal delivery within the State; and in case of your failure to appear, or answer, judgment will be taken against you by default, for the relief demanded in the Complaint.

Dated: Mineola, New York
October 22, 2007

BRIAN M. LIMMER, ESQ.
Attorney for Plaintiffs
114 Old Country Road
Suite 460
Mineola, NY 11501
(516) 877-8100

DEFENDANT'S ADDRESS:

SIMPLEX GRINNELL LP a/k/a and/or d/b/a
as SIMPLEX GRINNELL or TYCO/FIRE &
SECURITY/SIMPLEX GRINNELL,
2323 Randolph Avenue
Second Floor, Avenel
New Jersey 07001.

SUPREME COURT OF THE STATE OF NEW SIMPLEX
COUNTY OF THE BRONX

-----------------------------------------X

BETANCOURT PROPERTIES MANAGEMENT CORP. and RENEWAL ARTS REALTY CORP.,

Plaintiffs,

-against-

SIMPLEX GRINNELL LP a/k/a and/or d/b/a as SIMPLEX GRINNELL or TYCO/FIRE & SECURITY/SIMPLEX GRINNELL,

Defendant.

-----------------------------------------X

Index No. 302266/07
Date Filed: 10/28/07

I, BRIAN M. LIMMER, HEREBY CERTIFY THAT, to the best of my knowledge, information and belief, formed after inquiry reasonable under the circumstances, the presentation of the SUMMONS AND VERIFIED COMPLAINT or the contentions therein are not frivolous, as defined in subsection (c) of Section 130-1.1.

Dated: Mineola, New SIMPLEX
October 22, 2007

BRIAN M. LIMMER, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF THE BRONX
-------------------------------------------X
BETANCOURT PROPERTIES MANAGEMENT CORP. and RENEWAL ARTS REALTY CORP.,

Plaintiffs,

-against-

SIMPLEX GRINNELL LP a/k/a and/or d/b/a as SIMPLEX GRINNELL or TYCO/FIRE & SECURITY/SIMPLEX GRINNELL,

Defendant.
-------------------------------------------X

**VERIFIED COMPLAINT**
Index No. 302266/07
Date Filed: 10/28/07

The Plaintiffs, by and through their attorney, Brian M. Limmer, Esq., alleges the following:

**FACTUAL ALLEGATIONS**

1. The Plaintiffs, BETANCOURT PROPERTIES MANAGEMENT CORP. and RENEWAL ARTS REALTY CORP. are domestic corporations organized under and by virtue of the laws of the State of New York with its principle places of business located at 804 East 138th Street, Bronx, NY 10454.

2. Defendant, SIMPLEX GRINNELL LP, (hereinafter referred to as "SIMPLEX"), is and was a foreign corporation organized under and by virtue of the laws of the State of Delaware and has filed a Certificate of Authority to do business in New York State as a foreign corporation with a principle place of business located at 2323 Randolph Avenue, Second Floor, Avenel, New Jersey 07001.

3.  Defendant, SIMPLEX is also known as SIMPLEX GRINNELL.

4.  Defendant, SIMPLEX is also known as TYCO/FIRE &
SECURITY/SIMPLEX GRINNELL.

5.  Defendant, SIMPLEX does business as SIMPLEX GRINNELL

6.  Defendant, SIMPLEX does business as TYCO/FIRE &
SECURITY/SIMPLEX GRINNELL.

7.  That on or about May 14, 2007 and continuing thereafter,
the Plaintiffs retained the Defendant, SIMPLEX wherein said
Defendant agreed to render certain constructing contracting and
related services and materials for or on behalf of the
Plaintiffs with respect to a certain construction project
located at 804 East 138th Street, Bronx, NY 10454 (hereinafter
referred to as the "premises").

8.  That at all relevant times mentioned herein, the
Defendant, SIMPLEX, its agents, servants and/or employees made
material representations to the Plaintiffs that it was: (a)
competent to render construction contracting services to the
Plaintiffs in the subject construction project; and (b) would
utilize, at minimum, the standard of rendering construction
contracting services of a type and quality that was usual and
customary for a similarly situated construction company in the
same general community to render to the Plaintiffs in the
construction project referred to above and in all matters
related thereto and that such services, labor and materials
would be provided and furnished in a good and workmanlike

manner.

9. That the Defendant, SIMPLEX, pursuant to agreements with the Plaintiffs, was to provide and/or furnish certain work, labor, services and/or materials with respect to the construction project referred to above wherein said Defendant, was engaged as a contractor by the Plaintiffs.

10. That the Defendant, SIMPLEX, its agents, servants and/or employees represented and warranted to the Plaintiffs that said Defendant, its, their agents, servants and/or employees were competent in their respective fields of trade and expertise and would perform in a good and workmanlike manner at the construction project referred to above.

11. That the Plaintiffs relied upon said material representations to its potential detriment.

12. Defendant SIMPLEX was duly provided with a Notice of Default by Plaintiffs regarding the premises.

13. Defendant SIMPLEX did not cure the Notice of Default regarding the premises.

**FIRST CAUSE OF ACTION**

14. The Plaintiffs repeats, reiterates and realleges the above allegations as if more fully set forth below.

15. That the Defendant, SIMPLEX, its agents, servants and/or employees was not competent to render construction contracting services to the Plaintiffs in the construction project referred to above and in all matters related thereto.

16.  That the Defendant, SIMPLEX, its agents, servants and/or employees,  breached its contract, oral and/or written with the Plaintiffs, to render competent construction and related services on behalf of the Plaintiffs in the construction project referred to above and in all related thereto.

17.  That the Defendant, SIMPLEX, its agents, servants and/or employees, did not render construction contracting and related services in a competent manner to the Plaintiffs.

18.  The Defendant, SIMPLEX, its agents, servants and/or employees, deviated from the standard of rendering construction contract and related services of a type and quality that was usual and customary for a similarly situated construction company in the same general community to render to the Plaintiffs in the construction project referred to above and in all matters related thereto.

19.  That the Defendant, SIMPLEX, its agents, servants and/or employees  breached its agreement with the Plaintiffs to provide workers as described above; further failed to provide the Plaintiffs with work, labor and/or services in a good or workmanlike manner and/or furnished defective or non-conforming goods and materials; and also failed to complete work at the respective project.

20.  That the Plaintiffs was damaged pursuant to the acts, omissions and resulting breach of contract of the Defendant.

21.  That the acts, omissions and resulting breach of

contract alleged above was the proximate cause of the damages sustained by the Plaintiffs herein without any comparative fault on the part of the Plaintiffs.

22. That by reason of the above, the Plaintiffs has been damaged in an amount that exceeds the monetary jurisdiction of the lower Courts.

**SECOND CAUSE OF ACTION**

23. The Plaintiffs repeat, reiterate and reallege the above allegations as if more fully set forth below.

24. Upon information and belief, the Defendant SIMPLEX, its agents servants and/or employees, was careless, negligent and/or reckless in rendering construction contracting and related services to the Plaintiffs.

25. That the Defendant, SIMPLEX, its agents, servants and/or employees was careless, reckless and/or negligent with respect to the management, maintenance, supervision and/or control of their respective business, officers and responsibilities causing the Defendant, to fail to provide the Plaintiffs with work, labor and/or services in a good or workmanlike manner; causing the Defendant to furnish defective or non-conforming goods and materials; and also causing the Defendant to fail to complete work at the respective project thereby causing the Plaintiffs to become damaged.

26. That the Plaintiffs were damaged pursuant to the Defendant's carelessness, negligence and/or recklessness

referred to above.

27. That the carelessness, negligence and/or recklessness alleged above was the proximate cause of the damages sustained by the Plaintiffs herein without any comparative fault on the part of the Plaintiffs.

28. That by reason of the above, the Plaintiffs has been damaged in an amount that exceeds the monetary jurisdiction of the lower Courts.

**THIRD CAUSE OF ACTION**

29. The Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above as if more fully set forth below.

30. Defendant SIMPLEX, its agents, servants and/or employees represented and warranted to the Plaintiffs that it was qualified in every respect with respect to the subject construction project and to retain subcontractors to perform in a good, accepted and workmanlike manner for and on behalf of the Plaintiffs.

31. Upon information and belief, the Defendant SIMPLEX, its agents, servants and/or employees fraudulently induced the Plaintiffs and acted in a conspiracy to defraud the Plaintiffs of valuable consideration with respect to the subject construction project.

32. By reason of the foregoing, Defendant SIMPLEX, its agents, servants and/or employees perpetrated a fraud upon

the Plaintiffs.

33. By reason of the foregoing, Defendant SIMPLEX perpetr3ated a fraud upon the Plaintiffs in an ultra vires act.

34. By reason of the foregoing, the Defendant SIMPLEX, its agents, servants and/or employees acted in a wanton, malicious, cruel and reprehensible manner towards the Plaintiffs.

35. By reason of the foregoing, the Plaintiffs also requests that punitive damages be awarded against the Defendants in an amount to be awarded by the trier of fact in an amount of not less than $500,000.00.

**FOURTH CAUSE OF ACTION**

36. The Plaintiff BETANCOURT PROPERTIES MANAGEMENT CORP. repeat, reiterates, and realleges each and every allegation set forth above as if more fully set forth below.

37. Plaintiff BETANCOURT PROPERTIES MANAGEMENT CORP. entered into a service agreement with Defendant SIMPLEX for the fire alarm system said Defendant was obligated to provide in whole or in part to the Plaintiffs as more fully set forth above.

38. The Defendant SIMPLEX engaged in anticipatory breach of the aforesaid service agreement thereby rendering it null, void and unenforceable by said Defendant's breach of contract and/or negligence and/or fraud set forth above, evidencing an intent not to honor its contractual obligations to the Plaintiffs for

the labor and/or materials needed to render Plaintiffs' fire alarm in working and proper order as well as the service agreement itself.

39.  The said Plaintiff also requests declaratory relief of this Court to adjudicate the rights and obligations of the parties herein and to declare the aforementioned service agreement null, void and unenforceable.

40.  Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiffs respectfully demand judgment as follows:

1.  In the First Cause of Action against the Defendant in an amount that exceeds the monetary jurisdiction of the lower Courts;

2.  In the Second Cause of Action against the Defendant in an amount that exceeds the monetary jurisdiction of the lower Courts;

3.  In the Third Cause of Action against the Defendants in an amount that exceeds the monetary jurisdiction of the lower Courts;

4.  In the Fourth Cause of Action for declaratory relief adjudicating the rights and obligations of the parties herein and to declare the aforementioned service agreement null, void and unenforceable.

5.  Reasonable attorneys' fees;

6.  Costs and disbursements;

7. Punitive damages against the Defendants be awarded by the trier of fact in an amount of not less than $500,000.00;

8. Applicable interest; and

9. For such other and further relief as this Court deems just, proper and equitable.

Dated: Mineola, New York
October 22, 2007

BRIAN M. LIMMER, ESQ.
Attorney for Plaintiffs
114 Old Country Road
Suite 460
Mineola, NY 11501
(516) 877-8100

**ATTORNEY'S VERIFICATION**

STATE OF NEW YORK )
) ss.:
COUNTY OF NASSAU )

I, the undersigned, an attorney admitted to practice in the Courts of the State of New York, state that I am Brian M. Limmer, Esq., the attorney of record for the Plaintiffs in the within action; I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. The reason this verification is made by me and not by my client is because your deponent maintains his law office in a County other than where my client maintains their principal place of business/ resides. The grounds to my belief as to all matters not stated upon my own knowledge are based upon communications with my client.

Dated: Mineola, New York
October 22, 2007

BRIAN M. LIMMER

SUPREME COURT OF THE STATE OF NEW SIMPLEX
COUNTY OF THE BRONX
-------------------------------------------X
BETANCOURT PROPERTIES MANAGEMENT CORP. and
RENEWAL ARTS REALTY CORP.,

Plaintiffs,

Index No. 302266/07
Date Filed: 10/28/07

-against-

SIMPLEX GRINNELL LP a/k/a and/or d/b/a
as SIMPLEX GRINNELL or TYCO/FIRE &
SECURITY/SIMPLEX GRINNELL,

Defendant.
-------------------------------------------X

**SUMMONS AND**
**VERIFIED COMPLAINT**

Law Office of Brian M. Limmer. Esq.
Attorney for Plaintiffs
114 Old Country Road
Suite 460
Mineola, NY 11501
(516) 877-8100

2007110800

2007110800

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

BETANCOURT PROPERTIES
MANAGEMENT CORP.
and RENEWAL ARTS REALTY CORP.,

CASE NO. 07-cv-11047-TPG

Plaintiffs,

-against-

SIMPLEX GRINNELL LP a/k/a and/or d/b/a
SIMPLEX GRINNELL or TYCO/FIRE &
SECURITY/SIMPLEXGRINNELL,

Defendants.

-----------------------------------------------------X

**AFFIDAVIT OF MARION RIVERA**

Marion Rivera, having personally appeared before me, deposed and stated as follows:

"My name is Marion Rivera. I am employed as office manager for SimplexGrinnell LP, 2323 Randolph Avenue, Avenel, New Jersey. In my capacity as office manager for SimplexGrinnell LP's Avenel, New Jersey district office, I serve as the custodian of records. I am over the age of 18 years, have never been convicted of a felony, and am otherwise qualified to make this affidavit based on my personal knowledge.

"I am familiar with the record keeping practices of SimplexGrinnell LP, whose address is 2323 Randolph Avenue, Avenel, New Jersey.

"I have examined the attached sales contract, found that it is an authentic business record of SimplexGrinnell LP, and that this record or report was caused to be made by SimplexGrinnell LP in the regular course of business.

"The entries made on these records and/or reports were entered at the time or shortly after the time of the transaction by an employee or representative of SimplexGrinnell LP, with personal knowledge of the acts, events or conditions described by the records.

"Further affiant sayeth not."

Marion Rivera

Marion Rivera, Affiant

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

Signed and subscribed to before me, Dawn A. Torstrup, a notary public in and for the State of New Jersey, on this the 8 day of January, 2008.

Dawn A Torstrup

Notary Public

My commission expires: Dawn A Torstrup Notary Public My Commission Expires 9/5/2011

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

**SimplexGrinnell**

2323 Randolph Avenue
2nd Floor
Avenel, NJ 07001
(888) 447-4027
FAX: (212) 462-4524
www.simplexgrinnell.com

## SimplexGrinnell Quotation

TO:
Betancourt Properties
800 East 138th Street
Bronx, NY 10454
Attn: Jose Betancourt
(718) 742-2800 EXT(____) Fax: (718) 742-2818

Project: 804 East 138th St. Refile/Insp
Customer Reference:
SimplexGrinnell Reference: 143405522
Date: 05/29/2007
Page 1 of 3

SimplexGrinnell is pleased to offer for your consideration this quotation for the above project.

| QUANTITY | MODEL NUMBER | DESCRIPTION |
|---|---|---|
| | 804 East 138th St. Re-File/FD Electrical Survey/A-433 | |
| 1 | DPSUB | ELECTRICAL LABOR |
| | Expedition/B-45 | |
| 1 | DPSUB | ENGINEER/EXPEDITOR |
| | FD Test | |
| 32 | TECH LAB | TECHNICAL LABOR |

**Total net selling price, FOB shipping point; $9,568.00**

Comments

Provide Engineer of Record to Perform Post Approval Amendment, Modify FA Plans to reflect temporal 3 operation, re submit M2680 and B-45.

Provide Electrical Contractor of Record for A-433 and affidavit stating system is trouble free.

Provide Technicians for FD Inspection.

EXCLUSIONS:

FD Inspection Fees.

THIS QUOTATION AND ANY RESULTING CONTRACT SHALL BE SUBJECT TO THE GENERAL TERMS AND CONDITIONS ATTACHED HERETO.
Fire, Security, Communications, Sales & Service
Offices & Representatives in Principal Cities throughout North America

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

**SimplexGrinnell**

Project: 804 East 138th St. Refile/Insp
Customer Reference:
SimplexGrinnell Reference: 143405522
Date: 05/29/2007
Page 2 of 3

## TERMS AND CONDITIONS

[illegible]

[illegible] AGREEMENT, ANY INSPECTION [illegible] TESTING PROVIDED UNDER THE AGREEMENT DOES NOT INCLUDE ANY [illegible] REPAIRS, ALTERATIONS, REPLACEMENT OF PARTS OR [illegible] ADJUSTMENTS WHATSOEVER, NOR DOES IT INCLUDE THE CORRECTION OF ANY DEFICIENCIES IDENTIFIED BY COMPANY TO CUSTOMER. COMPANY SHALL NOT BE RESPONSIBLE FOR [illegible] FAILURE OCCURRING [illegible] COMPANY IS IN THE PROCESS OF FOLLOWING ITS INSPECTION [illegible] WHERE THE FAILURE ALSO RESULTS FROM THE AGE [illegible] OF THE ITEM OR DUE TO NORMAL WEAR AND TEAR. THE AGREEMENT DOES NOT COVER SYSTEMS, EQUIPMENT, COMPONENTS OR PARTS THAT ARE BELOW GRADE, BEHIND WALLS OR OTHER [illegible] EXTERIOR TO THE BUILDING, ELECTRICAL [illegible]

[illegible]

Fire, Security, Communications, Sales & Service
Offices & Representatives in Principal Cities throughout North America

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

**SimplexGrinnell**

Project: 804 East 138th St. Refile/Insp
Customer Reference:
SimplexGrinnell Reference: 143405522
Date: 05/29/2007
Page 3 of 3

[illegible]

EXCEPT AS EXPRESSLY SET FORTH HEREIN, COMPANY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE SERVICES PERFORMED OR THE PRODUCTS, SYSTEMS OR EQUIPMENT, IF ANY, SUPPORTED HEREUNDER. COMPANY MAKES NO WARRANTY OR REPRESENTATION, AND UNDERTAKES NO OBLIGATION TO ENSURE BY THE SERVICES PERFORMED UNDER THIS AGREEMENT THAT COMPANY'S PRODUCTS OR THE SYSTEMS OR EQUIPMENT OF THE CUSTOMER WILL CORRECTLY HANDLE THE PROCESSING OF CALENDAR DATES BEFORE OR AFTER DECEMBER 31, 1999.

[illegible]

*IMPORTANT NOTICE TO CUSTOMER*

In accepting this Proposal, Customer agrees to the terms and conditions contained herein including those on the following pages of this Agreement and any attachments or riders attached hereto that contain additional terms and conditions. It is understood that these terms and conditions shall prevail over any variation in terms and conditions on any purchase order or other document that the Customer may issue. Any changes in the system requested by the Customer after the execution of this Agreement shall be paid for by the Customer and such changes shall be authorized in writing. ATTENTION IS DIRECTED TO THE LIMITATION OF LIABILITY, WARRANTY, INDEMNITY AND OTHER CONDITIONS ON THE FOLLOWING PAGES. This Proposal shall be void if not accepted in writing within thirty (30) days from the date of the Proposal.

| Offered By: SimplexGrinnell LP Licensee | Accepted By: (Customer) |
|---|---|
| 2333 Randolph Avenue, 2nd Floor, Avenel, NJ 07001 | Company: Renewal Arts Realty Corp. |
| Telephone: (888) 417-4227 Fax: 212-462-4524 | Address: 800 East 138th St Bx, NY |
| Representative: Robert Leslie 917-417-7521 | Signature: [signature] |
| Email: [illegible] | Title: President |
| | P.O.#: Date: 05/30/07 |

Fire, Security, Communications, Sales & Service
Offices & Representatives in Principal Cities throughout North America

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

**SimplexGrinnell**

2323 Randolph Avenue
2nd Floor
Avenel, NJ 07001
(888) 447-4027
FAX: (212) 462-4524
www.simplexgrinnell.com

## SimplexGrinnell Quotation

TO:
Betancourt Properties
800 East 138th Street
Bronx, NY 10454
Attn: Jose Betancourt

(718) 742-2800 EXT(____) Fax: (718) 742-2818

Project: 804 East 138th St. Refile/Insp
Customer Reference:
SimplexGrinnell Reference: 143405522
Proposal #: P21190-000806
Date: 01/11/2008
Page 1 of 3

SimplexGrinnell is pleased to offer for your consideration this quotation for the above project.

| QUANTITY | MODEL NUMBER | DESCRIPTION |
|---|---|---|
| | **804 East 138th St. Re-File/FD** | |
| | Electrical Survey/A-433 | |
| 1 | DPSUB | ELECTRICAL LABOR |
| | Expeditor/B-45 | |
| 1 | DPSUB | ENGINEER/EXPEDITOR |
| | FD Test | |
| 32 | TECH LAB | TECHNICAL LABOR |

**Total net selling price, FOB shipping point, $9,568.00**

Comments

Provide Engineer of Record to Perform Post Approval Amendmant, Modify FA Plans to reflect temporal 3 operation, re submit M2565 and B-45.

Provide Electrical Contractor of Record for A-433 and affidavit stating system is trouble free.

Provide Technicians for FD Inspection.

EXCLUSIONS:

FD Inspection Fees.

THIS QUOTATION AND ANY RESULTING CONTRACT SHALL BE SUBJECT TO THE GENERAL TERMS AND CONDITIONS ATTACHED HERETO.
Fire, Security, Communications, Sales & Service
Offices & Representatives in Principal Cities throughout North America

**SimplexGrinnell**

Project: 804 East 138th St. Refile/Insp
Customer Reference:
SimplexGrinnell Reference: 143405522
Date: 01/11/2008

## TERMS AND CONDITIONS

**1. Payment.** Payments shall be invoiced and due in accordance with the terms and conditions set forth above. Work performed on a time and material basis shall be at the then-prevailing Company rate for material, labor, and related items, in effect at the time supplied under this Agreement. Company shall invoice Customer for progress payments to one hundred (100%) percent based upon equipment delivered or stored, and services performed. Customers without established satisfactory credit shall make payments of cash in advance, upon delivery or as otherwise specified by Company. Where Customer establishes and maintains satisfactory credit, payments shall be due and payable thirty (30) days from date of invoice. Company reserves the right to revoke or modify Customer's credit at its sole discretion. The Customer's failure to make payment when due is a material breach of this Agreement.

If Customer fails to make any payment when due, in addition to any other rights and remedies available, Company shall have the right, at Company's sole discretion, to stop performing any Services and/or withhold further deliveries of materials, until the account is current. In the event payment is not received when due, Company may, at its discretion, assess late fees at the rate of 1.5% per month or the maximum rate allowed by law. Customer agrees to pay all costs of collection, including without limitation costs, fees, and attorneys' fees. Customer's failure to make payment when due is a material breach of this Agreement until the account is current.

**2. Pricing.** The pricing set forth in this Agreement is based on the number of devices to be installed and services to be performed as set forth in the Scope of Work ("Equipment" and "Services"). If the actual number of devices installed or services to be performed is greater than that set forth in the Scope of Work, the price will be increased accordingly. If this Agreement extends beyond one year, SimplexGrinnell may increase prices upon notice to the Customer. Customer agrees to pay all taxes, permits, and other charges, including but not limited to state and local sales and excise taxes, however designated, levied or based on the service charges pursuant to this Agreement.

**3. Alarm Monitoring Services.** Any reference to alarm monitoring services in this Agreement is included for pricing purposes only. Alarm monitoring services are performed pursuant to the terms and conditions of Company's standard alarm monitoring services agreement.

**4. Code Compliance.** Company does not undertake an obligation to inspect for compliance with laws or regulations unless specifically stated in the Scope of Work. Customer acknowledges that the Authority Having Jurisdiction (e.g. Fire Marshal) may establish additional requirements for compliance with local codes. Any additional services or equipment required will be provided at an additional cost to Customer.

**5. Limitation Of Liability; Limitations Of Remedy. It is understood and agreed by the Customer that Company is not an insurer and that insurance coverage, if any, shall be obtained by the Customer and that amounts payable to company hereunder are based upon the value of the services and the scope of liability set forth in this Agreement and are unrelated to the value of the Customer's property and the property of others located on the premises. Customer agrees to look exclusively to the Customer's insurer to recover for injuries or damage in the event of any loss or injury and that Customer releases and waives all right of recovery against Company arising by way of subrogation. Company makes no guaranty or Warranty, including any implied warranty of merchantability or fitness for a particular purpose that equipment or services supplied by Company will detect or avert occurrences or the consequences therefrom that the equipment or service was designed to detect or avert.**

**It is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from failure on the part of Company to perform any of its obligations under this Agreement. Accordingly, Customer agrees that, Company shall be exempt from liability for any loss, damage or injury arising directly or indirectly from occurrences, or the consequences therefrom, which the equipment or service was designed to detect or avert. Should Company be found liable for any loss, damage or injury arising from a failure of the equipment or service in any respect, Company's liability shall be limited to an amount equal to the Agreement price (as increased by the price for any additional work) or where the time and material payment term is selected, Customer's time and material payments to Company. Where this Agreement covers multiple sites, liability shall be limited to the amount of the payments allocable to the site where the incident occurred. Such sum shall be complete and exclusive. If Customer desires Company to assume greater liability, the parties shall amend this Agreement by attaching a rider setting forth the amount of additional liability and the additional amount payable by the Customer for the assumption by Company of such greater liability, provided however that such rider shall in no way be interpreted to hold Company as an insurer. IN NO EVENT SHALL COMPANY BE LIABLE FOR ANY DAMAGE, LOSS, INJURY, OR ANY OTHER CLAIM ARISING FROM ANY SERVICING, ALTERATIONS, MODIFICATIONS, CHANGES, OR MOVEMENTS OF THE COVERED SYSTEM(S) OR ANY OF ITS COMPONENT PARTS BY THE CUSTOMER OR ANY THIRD PARTY. COMPANY SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING BUT NOT LIMITED TO DAMAGES ARISING FROM THE USE, LOSS OF THE USE, PERFORMANCE, OR FAILURE OF THE COVERED SYSTEM(S) TO PERFORM. The limitations of liability set forth in this Agreement shall inure to the benefit of all parents, subsidiaries and affiliates of company, whether direct or indirect, company's employees, agents, officers and directors.**

**6. General Provisions.** Customer has selected the service level desired after considering and balancing various levels of protection afforded, and their related costs. Customer acknowledges and agrees that by this Agreement, Company, unless specifically stated, does not undertake any obligation to maintain or render Customer's system or equipment as Year 2000 compliant, which shall mean, capable of correctly handling the processing of calendar dates before or after December 31, 1999. All work to be performed by Company will be performed during normal working hours of normal working days (8:00 a.m. – 5:00 p.m., Monday through Friday, excluding Company holidays), as defined by Company, unless additional times are specifically described in this Agreement.

Company will perform the services described in the Scope of Work section ("Services") for one or more system(s) or equipment as described in the Scope of Work section or the listed attachments ("Covered System(s)").

The Customer shall promptly notify Company of any malfunction in the Covered System(s) which comes to Customer's attention. This Agreement assumes the Covered System(s) are in operational and maintainable condition as of the Agreement date. If, upon initial inspection, Company determines that repairs are recommended, repair charges will be submitted for approval prior to any work. Should such repair work be declined Company shall be relieved from any and all liability arising therefrom. UNLESS OTHERWISE SPECIFIED IN THIS AGREEMENT, ANY INSPECTION (AND, IF SPECIFIED, TESTING) PROVIDED UNDER THIS AGREEMENT DOES NOT INCLUDE ANY MAINTENANCE, REPAIRS, ALTERATIONS, REPLACEMENT OF PARTS, OR ANY FIELD ADJUSTMENTS WHATSOEVER, NOR DOES IT INCLUDE THE CORRECTION OF ANY DEFICIENCIES IDENTIFIED BY COMPANY TO CUSTOMER. COMPANY SHALL NOT BE RESPONSIBLE FOR EQUIPMENT FAILURE OCCURRING WHILE COMPANY IS IN THE PROCESS OF FOLLOWING ITS INSPECTION TECHNIQUES, WHERE THE FAILURE ALSO RESULTS FROM THE AGE OR OBSOLESCENCE OF THE ITEM OR DUE TO NORMAL WEAR AND TEAR. THIS AGREEMENT DOES NOT COVER SYSTEMS, EQUIPMENT, COMPONENTS OR PARTS THAT ARE BELOW GRADE, BEHIND WALLS OR OTHER OBSTRUCTIONS OR EXTERIOR TO THE BUILDING, ELECTRICAL WIRING, AND PIPING.

**7. Customer Responsibilities.** Customer shall furnish all necessary facilities for performance of its work by Company, adequate space for storage and handling of materials, light, water, heat, heat tracing, electrical service, local telephone, watchman, and crane and elevator service and necessary permits. Where wet pipe system is installed, Customer shall supply and maintain sufficient heat to prevent freezing of the system. Customer shall promptly notify Company of any malfunction in the Covered System(s) which comes to Customer's attention. This Agreement assumes any existing system(s) are in operational and maintainable condition as of the Agreement date. If, upon initial inspection, Company determines that repairs are recommended, repair charges will be submitted for approval prior to any work. Should such repair work be declined Company shall be relieved from any and all liability arising therefrom.

Customer shall further:

- supply required schematics and drawings unless they are to be supplied by Company in accordance with this Agreement;
- Provide a safe work environment, in the event of an emergency or Covered System(s) failure, take reasonable safety precautions to protect against personal injury, death, and property damage, continue such measures until the Covered System(s) are operational, and notify Company as soon as possible under the circumstances.
- Provide Company access to any system(s) to be serviced,
- Comply with all laws, codes, and regulations pertaining to the equipment and/or services provided under this agreement.

**8. Excavation.** In the event the Work includes excavation, Customer shall pay, as an extra to the contract price, the cost of any additional work performed by Company dues to water, quicksand, rock or other unforeseen condition or obstruction encountered or shoring required.

**9. Structure and Site Conditions.** While employees of Company will exercise reasonable care in this respect, Company shall be under not responsibility for loss or damage due to the character, condition or use of foundations, walls, or other structures not erected by it or resulting from the excavation in proximity thereto, or for damage resulting from concealed piping, wiring, fixtures, or other equipment or condition of water pressure. All shoring or protection of foundation, walls or other structures subject to being disturbed by any excavation required hereunder shall be the responsibility of Customer. Customer shall have all things in readiness for installation including, without limitation, structure to support the sprinkler system and related equipment (including tanks), other materials, floor or suitable working base, connections and facilities for erection at the time the materials are delivered. In the event Customer fails to have all things in readiness at the time scheduled for receipt of materials, Customer shall reimburse Company for all expenses caused by such failure. Failure to make areas available to Company during performance in accordance with schedules that are the basis for Company's proposal shall be considered a failure to have things in readiness in accordance with the terms of this Agreement.

**10. Confined Space.** If access to confined space by Company is required for the performance of Services, Services shall be scheduled and performed in accordance with Company's then-current hourly rate.

**11. Hazardous Materials.** Customer represents that, except to the extent that Company has been given written notice of the following hazards prior to the execution of this Agreement, to the best of Customer's knowledge there is no:

- "permit confined space," as defined by OSHA,
- risk of infectious disease,
- need for air monitoring, respiratory protection, or other medical risk,
- asbestos, asbestos-containing material, formaldehyde or other potentially toxic or otherwise hazardous material contained in or on the surface of the floors, walls, ceilings, insulation or other structural components of the area of any building where work is required to be performed under this Agreement.

All of the above are hereinafter referred to as "Hazardous Conditions".

Company shall have the right to rely on the representations listed above. If hazardous conditions are encountered by Company during the course of Company's work, the discovery of such materials shall constitute an event beyond Company's control and Company shall have no obligation to further perform in the area where the hazardous conditions exist until the area has been made safe by Customer as certified in writing by an independent testing agency, and Customer shall pay disruption expenses and re-mobilization expenses as determined by Company.

This Agreement does not provide for the cost of capture, containment or disposal of any hazardous waste materials, or hazardous materials, encountered in any of the Covered System(s) and/or during performance of the Services. Said materials shall at all times remain the responsibility and property of Customer. Company shall not be responsible for the testing, removal or disposal of such hazardous materials.

**12. OSHA Compliance.** Customer shall indemnify and hold Company harmless from and against any and all claims, demands and/or damages arising in whole or in part from the enforcement of the Occupational Safety Health Act (and any amendments or changes thereto) unless said claims, demands or damages are a direct result of causes within the exclusive control of Company.

**13. Interferences.** Customer shall be responsible to coordinate the work of other trades (including but not limited to ducting, piping, and electrical) and for and additional costs incurred by Company arising out of interferences to Company's work caused by other trades.

**14. Modifications and Substitutions.** Company reserves the right to modify materials, including substituting materials of later design, providing that such modifications or substitutions will not materially affect the performance of the Covered System(s).

**15. Changes, Alterations, Additions.** Changes, alterations and additions to the Scope of Work, plans, specifications or construction schedule shall be invalid unless approved in writing by Company. Should changes be approved by Company, that increase or decrease the cost of the work to Company, the parties shall agree, in writing, to the change in price prior to performance of aid work. However, if no agreement is reached prior to the time for performance of said work, and Company elects to perform said work so as to avoid delays, then Company's estimate as to the value of said work shall be deemed accepted by Customer. In addition, Customer shall pay for all extra work requested by Customer or made necessary because of incompleteness or inaccuracy of plans or other information submitted by Customer with respect to the location, type of occupancy, or other details of the work to be performed. In the event the layout of Customer's facilities has been altered, or is altered by Customer prior to the completion of the Work, Customer shall advise Company, and prices, delivery and completion dates shall be changed by Company as may be required.

**16. Commodities Availability.** Company shall not be responsible for failure to provide services, deliver products, or otherwise perform work required by this Agreement due to lack of available steel products or products made from plastics or other commodities. 1) In the event Company is unable, after reasonable commercial efforts, to acquire and provide steel products, or products made from plastics or other commodities, if required to perform work required by this Agreement, Customer hereby agrees that Company may terminate the Agreement, or the relevant portion of the Agreement, at no additional cost and without penalty. Customer agrees to pay Company in full for all work performed up to the time of any such termination. 2) If Company is able to obtain the steel products or products made from plastics or other commodities, but the price of any of the products has risen by more than 10% from the date of the bid, proposal or date Company executed this Agreement, whichever occurred first, then Company may pass through that increase through a reasonable price increase to reflect increased cost of materials.

**17. Project Claims.** Any claim of failure to perform against Company arising hereunder shall be deemed waived unless received by Company, in writing specifically setting forth the basis for such claim, within ten (10) days after such claims arises.

**18. Backcharges.** No charges shall be levied against the Seller unless seventy-two (72) hours prior written notice is given to Company to correct any alleged deficiencies which are alleged to necessitate such charges and unless such alleged deficiencies are solely and directly caused by Company.

**19. System Equipment.** The purchase of equipment or peripheral devices (including but not limited to smoke detectors, passive infrared detectors, card readers, sprinkler system components, extinguishers and hoses) from Company shall be subject to the terms and conditions of this Agreement. If, in Company's sole judgment, any peripheral device or other system equipment, which is attached to the Covered System(s), whether provided by Company or a third party, interferes with the proper operation of the Covered System(s), Customer shall remove or replace such device or equipment promptly upon notice from Company. Failure of Customer to remove or replace the device shall constitute a material breach of this Agreement. If Customer adds any third party device or equipment to the Covered System(s), Company shall not be responsible for any damage to or failure of the Covered System(s) caused in whole or in part by such device or equipment.

**20. Reports.** Where inspection and/or test services are selected, such inspection and/or test shall be completed on Company's then current Report form, which shall be given to Customer, and, where applicable, Company may submit a copy thereof to the local authority having jurisdiction. The Report and recommendations by Company are only advisory in nature and are intended to assist Customer in reducing the risk of loss to property by indicating obvious defects or impairments noted to the system and equipment inspected and/or tested. They are not intended to imply that no other defects or hazards exist or that all aspects of the Covered System(s), equipment, and components are under control at the time of inspection. Final responsibility for the condition and operation of the Covered System(s) and equipment and components lies with Customer.

**21. Limited Warranty.** Subject to the limitations below, Company warrants any equipment (as distinguished from the Software) installed pursuant to this Agreement to be free from defects in material and workmanship under normal use for a period of one (1) year from the date of first beneficial us or all or any part of the Covered System(s) or 18 months after Equipment shipments, whichever is earlier, provided however, that Company's soles liability, and Customer's sole remedy, under this limited warranty shall be limited to the repair or replacement of the Equipment or any

**SimplexGrinnell**

Project: 804 East 138th St. Refile/Insp
Customer Reference:
SimplexGrinnell Reference: 143405522
Date: 01/11/2008

part thereof, which Company determines is defective, at Company's sole option and subject to the availability of service personnel and parts, as determined by Company. Company warrants expendable items, including, but not limited to, video and print heads, television camera tubes, video monitor displays tubes, batteries and certain other products in accordance with the applicable manufacturers warranty. Company does not warrant devices designed to fail in protecting the System, such as, but not limited to, fuses and circuit breakers.

Company warrants that any Company software described in this Agreement, as well as software contained in or sold as part of any Equipment described in this Agreement, will reasonably conform to its published specifications in effect at the time of delivery and for ninety (90) days after delivery. However, Customer agrees and acknowledges that the software may have inherent defects because of its complexity. Company's sole obligation with respect to software, and Customer's sole remedy, shall be to make available published modifications, designed to correct inherent defects, which become available during the warranty period.

If Repair Services are included in this Agreement, Company warrants that its workmanship and material for repairs made pursuant to this Agreement will be free from defects for a period of ninety (90) days from the date of furnishing.

**EXCEPT AS EXPRESSLY SET FORTH HEREIN, COMPANY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE SERVICES PERFORMED OR THE PRODUCTS, SYSTEMS OR EQUIPMENT, IF ANY, SUPPORTED HEREUNDER. COMPANY MAKES NO WARRANTY OR REPRESENTATION, AND UNDERTAKES NO OBLIGATION TO ENSURE BY THE SERVICES PERFORMED UNDER THIS AGREEMENT, THAT COMPANY'S PRODUCTS OR THE SYSTEMS OR EQUIPMENT OF THE CUSTOMER WILL CORRECTLY HANDLE THE PROCESSING OF CALENDAR DATES BEFORE OR AFTER DECEMBER 31, 1999.**

Warranty service will be performed during Company's normal working hours. If Customer requests warranty service at other than normal working hours, service will be performed at Company's then current rates for after ours services. All repairs or adjustments that are or may become necessary shall be performed by and authorized representative of Company. Any repairs, adjustments or interconnections performed by Customer or any third party shall void all warranties.

**22. Indemnity.** Customer agrees to indemnify, hold harmless and defend Company against any and all losses, damages, costs, including expert fees and costs, and expenses including reasonable defense costs, arising from any and all third party claims for personal injury, death, property damage or economic loss, including specifically any damages resulting from the exposure of workers to Hazardous Conditions whether or not Customer pre-notifies Company of the existence of said hazardous conditions, arising in any way from any act or omission of Customer or Company relating in any way to this Agreement, including but not limited to the Services under this Agreement, whether such claims are based upon contract, warranty, tort (including but not limited to active or passive negligence), strict liability or otherwise. Company reserves the right to select counsel to represent it in any such action.

**23. Insurance.** Customer shall name Company, its officers, employees, agents, subcontractors, suppliers, and representatives as additional insureds on Customer's general liability and auto liability policies.

**24. Termination.** Any termination under the terms of this Agreement shall be made in writing. In the event Customer terminates this Agreement prior to completion for any reason not arising solely from Company's performance or failure to perform, Customer understands and agrees that Company will incur costs of administration and preparation that are difficult to estimate or determine. Accordingly, should Customer terminate this Agreement as described above, Customer agrees to pay all charges incurred for products and equipment installed and services performed, and in addition pay an amount equal to twenty (20%) percent of the price of products and equipment not yet delivered and Services not yet performed, return all products and equipment delivered and pay a restocking fee of twenty (20%) percent the price of products or equipment returned.

Company may terminate this Agreement immediately at its sole discretion upon the occurrence of any Event of Default as hereinafter defined. Company may also terminate this Agreement at its sole discretion upon notice to Customer if Company's performance of its obligations under this Agreement becomes impracticable due to obsolescence of equipment at Customer's premises or unavailability of parts.

**25. Default.** An Event of Default shall be 1) failure of the Customer to pay any amount within ten (10) days after the amount is due and payable, 2) abuse of the System or the Equipment, 3) dissolution, termination, discontinuance, insolvency or business failure of Customer. Upon the occurrence of an Event of Default, Company may pursue one or more of the following remedies, 1) discontinue furnishing Services, 2) by written notice to Customer declare the balance of unpaid amounts due and to become due under the this Agreement to be immediately due and payable, provided that all past due amounts shall bear interest at the rate of 1 ½% per month (18% per year) or the highest amount permitted by law, 3) receive immediate possession of any equipment for which Customer has not paid. 4) proceed at law or equity to enforce performance by Customer or recover damages for breach of this Agreement, and 5) recover all costs and expenses, including without limitation reasonable attorneys' fees, in connection with enforcing or attempting to enforce this Agreement.

**26. Exclusions.** Unless expressly included in the Scope of Work, this Agreement expressly excludes, without limitation, testing inspection and repair of duct detectors, beam detectors, and UV/IR equipment; provision of fire watches; clearing of ice blockage; draining of improperly pitched piping; replacement of batteries; recharging of chemical suppression systems; reloading of, upgrading, and maintaining computer software; system upgrades and the replacement of obsolete systems, equipment, components or parts; making repairs or replacements necessitated by reason of negligence or misuse of components or equipment or changes to Customer's premises, vandalism, corrosion (including but not limited to micro-bacterially induced corrosion ("MIC")), power failure, current fluctuation, failure due to non-Company installation, lightning, electrical storm, or other severe weather, water, accident, fire, acts of God or any other cause external to the Covered System(s). Repair Services provided pursuant to this Agreement do not cover and specifically excludes system upgrades and the replacement of obsolete systems, equipment, components or parts. All such services may be provided by Company at Company's sole discretion at an additional charge. If Emergency Services are expressly included in the scope of work section, the Agreement price does not include travel expenses.

**27. Force Majeure; Delays.** Company shall not be liable for any damage or penalty for delays or failure to perform work due to acts of God, acts or omissions of Customer, acts of civil or military authorities, Government regulations or priorities, fires, epidemics, quarantine, restrictions, war, riots, civil disobedience or unrest, strikes, delays in transportation, vehicle shortages, differences with workmen, inability to obtain necessary labor, material or manufacturing facilities, defaults of Company's subcontractors, failure or delay in furnishing compete information by Customer with respect to location or other details of work to be performed, impossibility or impracticability of performance or any other cause or causes beyond Company's control, whether or not similar to the foregoing. In the event of any delay caused as aforesaid, completion shall be extended for a period equal to any such delay, and this contract shall not be void or voidable as a result of the delay. In the event work is temporarily discontinued by any of the foregoing, all unpaid installments of the contract price, les an amount equal to the value of material and labor not furnished, shall be due and payable upon receipt of invoice by Customer.

**28. One-Year Limitation On Actions; Choice Of Law.** It is agreed that no suit, or cause of action or other proceeding shall be brought against either party more than one (1) year after the accrual of the cause of action or one (1) year after the claim arises, whichever is shorter, whether known or unknown when the claim arises or whether based on tort, contract, or any other legal theory. The laws of Massachusetts shall govern the validity, enforceability, and interpretation of this Agreement.

**29. Assignment.** Customer may not assign this Agreement without Company's prior written consent. Company may assign this Agreement to an affiliate without obtaining Customer's consent.

**30. Entire Agreement.** The parties intend this Agreement, together with any attachments or Riders (collectively the "Agreement) to be the final, complete and exclusive expression of their Agreement and the terms and conditions thereof. This Agreement supersedes all prior representations, understandings or agreements between the parties, written or oral, and shall constitute the sole terms and conditions of sale for all equipment and services. No waiver, change, or modification of any terms or conditions of this Agreement shall be binding on Company unless made in writing and signed by an Authorized Representative of Company.

**31. Severability.** If any provision of this Agreement is held by any court or other competent authority to be void or unenforceable in whole or in part, this Agreement will continue to be valid as to the other provisions and the remainder of the affected provision.

**32. Legal Fees.** Company shall be entitled to recover from the customer all reasonable legal fees incurred in connection with Company enforcing the terms and conditions of this Agreement.

**33. License Information** (Security System Customers): AL Alabama Electronic Security Board of Licensure 7956 Vaughn Road, PMB 392, Montgomery, Alabama 36116 (334) 264-9388: AR Regulated by: Arkansas Board of Private Investigators and Private Security Agencies, #1 State Police Plaza Drive, Little Rock 72209 (501)618-8600: CA Alarm company operators are licensed and regulated by the Bureau of Security and Investigative Services, Department of Consumer Affairs, Sacramento, CA, 95814. Upon completion of the installation of the alarm system, the alarm company shall thoroughly instruct the purchaser in the proper use of the alarm system. Failure by the licensee, without legal excuse, to substantially commence work within 20 days from the approximate date specified in the agreement when the work will begin is a violation of the Alarm Company Act.: NY Licensed by the N.Y.S. Department of the State: TX Texas Commission on Private Security, 5805 N. Lamar Blvd., Austin, TX 78752-4422, 512-424-7710.

***IMPORTANT NOTICE TO CUSTOMER***

In accepting this Proposal, Customer agrees to the terms and conditions contained herein including those on the following pages of this Agreement and any attachments or riders attached hereto that contain additional terms and conditions. It is understood that these terms and conditions shall prevail over any variation in terms and conditions on any purchase order or other document that the Customer may issue. Any changes in the system requested by the Customer after the execution of this Agreement shall be paid for by the Customer and such changes shall be authorized in writing. **ATTENTION IS DIRECTED TO THE LIMITATION OF LIABILITY, WARRANTY, INDEMNITY AND OTHER CONDITIONS ON THE FOLLOWING PAGES. This Proposal shall be void if not accepted in writing within thirty (30) days from the date of the Proposal.**

| Offered By: | Accepted By: (Customer) |
|---|---|
| SimplexGrinnell LP License#: | |
| 2323 Randolph Avenue<br>2nd Floor<br>Avenel, NJ 07001 | Company: |
| Telephone: (888) 447-4027 Fax: 212-462-4524 | Address: |
| Representative: Robert Laurie 917-417-7521 | Signature: |
| Email: rlaurie@tycoint.com | Title: |
| | P.O.#: Date: |